UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>    Plaintiff,<br><br>v.<br><br>FYI MC, LLC, et al.,<br><br>    Defendants. | Case No. 21-cv-02845-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 9 |

Pending before the Court is Defendants FYI MC, LLC and PYP GE LLC's motion to dismiss Plaintiff Samuel Love's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Docket No. 13 ("Mot.").

For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.

### I.     BACKGROUND

A.    Factual Allegations in the Complaint

Mr. Love's complaint alleges as follows. Plaintiff is a paraplegic California resident who uses a wheelchair for mobility. Compl. ¶ 1. He has brought numerous lawsuits challenging the adequacy of hotels' websites in describing accessibility. *See, e.g.*, *Love v. Ashford S.F. II LP*, No. 20-CV-08458-EMC, 2021 WL 1428372 (N.D. Cal. Apr. 15, 2021); *Love v. Wildcat Owners Lessee*, Case No. 4:20-cv-08913-DMR (N.D. Cal. April 5, 2021); *Love v. KSSF Enters. Inc.*, 20-cv-08535-LB, 2021 U.S. Dist. LEXIS 51788 (N.D. Cal. Mar. 18, 2021); *Love v. Marriott Hotel Servs.*, No. 20-cv-07137-TSH, 2021 U.S. Dist. LEXIS 41081 (N.D. Cal. Mar. 3, 2021); *Love v. Gates Hotel, Inc.*, No. 20-cv-07191-SI, 2021 U.S. Dist. LEXIS 40113 (N.D. Cal. Mar. 2, 2021). Defendants own and operate the Milliken Creek Inn & Spa, a small hotel located at 1815

Silverado Trail, Napa, California (the "Hotel").  Compl. ¶ 2.

On February 4, 2021, Mr. Love alleges he accessed the Hotel's website, located at www.millikencreekinn.com, to book an accessible room for a trip he was planning to Napa in August of 2021.  *Id.* at 13–17.  The Hotel's website had an "Accessibility" tab that, according to Mr. Love, only states: "[i]f you have any questions about the accessibility at Milliken Creek Inn & Spa, please contact the innkeeper for assistance."  *Id.* ¶ 20.  Mr. Love complains that the website does not provide details about the guestroom's accessibility features, including the bathtub, shower, toilet, grab bars, or lavatory sink.  *Id.* ¶¶ 20–23.

Mr. Love contends that the Hotel is required by federal regulations to describe the critical areas in the guestroom "in enough detail to permit individuals with disabilities to assess independently whether a given hotel or guest room meets his accessibility needs."  *Id.* ¶ 27.  More specifically, Mr. Love alleges the Hotel's website should state:

- "that the hotel room entrance and interior doors provide at least 32 inches of clearance";
- "that there is at least 30 inches width on the side of the bed";
- that "the desk provides knee and toe clearance and is at least 17 inches high, 30 inches wide, and runs at least 17 inches deep";
- "that the toilet seat height is between 17-19 inches;"
- "that [the toilet] has the two required grab bars to facilitate transfer;"
- that "the sink provide[s] the knee clearance (17 inches high, 30 inches wide, 17 inches deep)";
- that "any plumbing under the sink [is] wrapped with insulation to protect against burning contact";
- that "the lowest reflective edge of the mirror is no more than 40 inches high"; and
- "what shower it is; . . . whether it has an in-shower seat; . . . that there are grab bars mounted on the walls; . . . that there is a detachable hand-held shower wand; [and] that the wall mounted accessories and equipment are all within 48 inches high."

*Id.* ¶ 24.

Because it lacks this information, Mr. Love contends the Hotel's website violates a regulation issued pursuant to the Americans With Disability Act (ADA) of 1990, which require hotels to "*describe* accessible features in the hotels and guest rooms offered through its reservations service *in enough detail* to reasonably permit individuals with disabilities to *assess independently* whether a *given* hotel or guest room meets *his or her* accessibility needs." FAC ¶ 34 (citing 28 C.F.R. 36.302(e)(1)(ii) (the "Reservations Rule")).

Mr. Love raises two causes of action in the FAC for violations of (1) Title III of the ADA, 42 U.S.C. §§ 12181–12189; and (2) California's Unruh Civil Rights Act (the "Unruh Act"), Cal. Civ. Code § 51-53. *Id.* ¶¶ 32–39.

B. <u>Supplemental Briefs</u>

Defendants submitted a supplemental brief at the instruction of this Court explaining that the Hotel is not in compliance with the ADA's 1991 Standards[1] because it was built *before* 1991. *See* Docket No. 14 (Defs.' Suppl. Br.) at 1–2. The Hotel was built in the 1850's as a stagecoach stop and in 1980 was converted to a hotel with eleven rooms spread throughout three buildings. *Id.* at 1. The current owner purchased the Hotel in 2013 with hopes of renovating the existing rooms and buildings but was unable to do so because of permitting issues with the City of Napa. *Id.* According to Defendants, the main reason the property is not ADA compliant is that "[t]he property has a slope in many areas that could not be economically or environmentally graded." *Id.* However, the owner was able to obtain permits and begin construction in January 2020 on a new building that will house one ADA accessible room, but work has been proceeding slowly due to the COVID-19 pandemic. *Id.* The Hotel will therefore not have an ADA-compliant room until the completion of the new building, which is projected for the summer of 2022. *Id.* at 2.

C. <u>Defendants' Request for Judicial Notice</u>

Defendants ask this Court to take judicial notice of the Hotel's website, which they contend contradicts the FAC's allegations. At the very bottom of the Hotel's homepage there is a small link titled "Accessibility":

---

[1] The Department originally published the ADA Standards for Accessible Design on July 26, 1991 and republished them as Appendix D to 28 C.F.R. part 36 (the "1991 Standards").

3

> Quick Links
>
> ROOMS
> OFFERS
> SPA
> FOOD & WINE
> LOCATION
> ACCESSIBILITY

Docket No. 9 (Req. for Judicial Notice (RJN)), Ex. 1. When a user clicks on that "Accessibility" link, they are taken to a separate page titled "Accessibility" that clearly states the Hotel is not accessible and does not have an ADA-compliant guestroom:

> ## ADA ACCESSIBILITY
>
> Milliken Creek Inn strives to provide inviting accommodations that are welcoming and accessible for all individuals, including those with hearing, vision, or another disability. We are in the process of enhancing the accessibility features of the inn including a new, fully accessible guestroom. We anticipate completing construction on this new guestroom by Summer 2022. Please contact the inn for re-opening dates of this guestroom.
>
> **Accessibility Assistance**
>
> Due to the historic nature of the hotel, several areas of the property are not accessible for individuals who require mobility assistance. If you have questions about the accessibility of the hotel or booking an accessible room at the hotel, we invite you to contact us immediately via telephone at (707) 255-1197 or via email at millikencreekinn@foursisters.com and our friendly guest services team will gladly assist you.
>
> If our ADA-accessible guestrooms appear to be already reserved online, please contact us via phone for assistance.

*Id.*, Ex. 2. The Accessibility page also describes the following "Accessibility Features" in the Hotel's common areas:

> **Property Accessibility Features**
>
> - Due to the historic nature and layout of the hotel, the property is currently not accessible to those requiring wheelchair access
> - 32-inch wide openings to common areas
> - Accessibility equipment for the hearing impaired
> - Accessible side approach registration desk
> - Braille signage at each guestroom door
> - An accessible parking space
> - Service animals are always welcome at Milliken Creek Inn
> - Please call us at (707) 255-1197 with any accessibility questions

*Id.* As for the guestrooms, the website acknowledges the Hotel does not have "a fully accessible guestroom," but lists the following accessibility features currently available in certain rooms:

///

///

> **Guestroom Accessibility Features**
>
> Although the guestroom has the following accessibility features, the path of travel to the guestroom may not be accessible for individuals who require certain types of mobility assistance. We are in the process of building a fully accessible guestroom. In the meantime, our Brookwood guestroom (#11) has the following features available:
>
> - Telephone with visual call alert and volume control
> - An electrical outlet within 4 feet of the telephone for TTY use (available at the Front Desk)
> - Doorbell with visual notification device
> - Visual strobe alarms for fire notification
> - Closed caption television
> - 36" clearance around the king-sized bed
> - Entrance door width of 36"
>
> View Guestroom

> **Guestroom Accessibility Features**
>
> Although the guestroom has the following accessibility features, the path of travel to the guestroom may not be accessible for individuals who require certain types of mobility assistance. We are in the process of building a fully accessible guestroom. In the meantime, our Brookwood Guestroom (#10) has the following features available:
>
> - Closed caption television
> - Grab bars in the shower with a removable shower seat
> - Electrical outlets within 4 feet of the telephone for TTY use (available at the Front Desk)
> - 36" clearance around the king-sized bed
> - Entrance door width of 36"
>
> View Guestroom

*Id.* Finally, the website instructs guests to contact the hotel if they "have any questions about accessibility":

> **Accessibility Assistance**
>
> Due to the historic nature of the hotel, several areas of the property are not accessible for individuals who require mobility assistance. If you have questions about the accessibility of the hotel or booking an accessible room at the hotel, we invite you to contact us immediately via telephone at (707) 255-1197 or via email at millikencreekinn@foursisters.com and our friendly guest services team will gladly assist you.
>
> If our ADA-accessible guestrooms appear to be already reserved online, please contact us via phone for assistance.

*Id.*

D. <u>Procedural Background</u>

On April 19, 2021, Mr. Love filed his initial complaint. *See* Compl. On May 19, 2021, Defendants filed the pending motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *See* Mot.

## II.     <u>STANDARD OF REVIEW</u>

A. <u>Rule 12(b)(6) Motion to Dismiss</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's

5

1  decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550
2  U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the
3  claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th
4  Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the
5  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &
6  Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not
7  simply recite the elements of a cause of action [and] must contain sufficient allegations of
8  underlying facts to give fair notice and to enable the opposing party to defend itself effectively."
9  *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d
10 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual
11 content that allows the court to draw the reasonable inference that the Defendant is liable for the
12 misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a
13 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
14 unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III. REQUEST FOR JUDICIAL NOTICE

When ruling on a Rule 12(b)(6) motion to dismiss, a court may, without converting the motion to one for summary judgment, consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice[.]" *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). Here, the Court can take judicial notice of the Hotel's website's contents because it is "information posted on certain . . . webpages that [Mr. Love] referenced in the [FAC]." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Moreover, Mr. Love does not oppose Defendants' request for judicial notice. *See* Docket No. 14 ("Opp'n") at 7.

Accordingly, the Court **GRANTS** Defendants' request to take judicial notice of the portions of the Hotel's website attached as exhibits 1 and 2 to its request for judicial notice. *See* RJN, Exs. 1 & 2.

///

///

## IV.     MOTION TO DISMISS

A.     ADA Claim

Mr. Love's ADA claim is entirely premised on Defendants' alleged failure to comply with 28 C.F.R. § 36.302(e)(1)(ii), also known in the hospitality industry as the "Reservations Rule," which requires hotels to "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to *reasonably* permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36302(e)(1)(ii) (emphasis added).

Importantly, the Reservations Rule does not specify exactly what information hotels are "reasonably" required to disclose. *Id.* As a result, the Department of Justice received several comments when it drafted the Reservations Rule urging it to "identify the specific accessible features of hotel rooms that must be described in the reservations system." 28 C.F.R. § Pt. 36, App. A, "Title III Regulations 2010 Guidance and Section-by-Section Analysis" (the "2010 Guidance"). The commentators' concern was that, without further clarification, the Reservations Rule "essentially would require reservations systems to include a full accessibility report on each hotel or resort property in its system." *Id.* In response, the Department "recognize[d] that a reservations system is not intended to be an accessibility survey" and that "[b]ecause of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information *must* be included in every instance." *Id.* (emphasis added). With that in mind, the 2010 Guidance outlined what information is likely sufficient to satisfy the Reservations Rule, which depends on whether the hotel was built before or after 1991. "For hotels that were built *in compliance with the 1991 standards*" the DOJ states:

> it may be sufficient to specify that the hotel *is accessible* and, for each accessible room, to describe the *general type of room* (e.g., deluxe executive suite), the *size and number of beds* (e.g., two queen beds), the *type of accessible bathing facility* (e.g., roll-in shower), and *communications features available in the room* (e.g., alarms and visual notification devices).

*Id.* (emphases added). "For *older* hotels with limited accessibility features," however,

information about the hotel *should* include, *at a minimum,*

7

>       information about *accessible entrances to the hotel*, the *path of
>       travel to guest check-in and other essential services*, and the
>       *accessible route to the accessible room* or rooms. *In addition to the
>       room information described above*, these hotels should provide
>       information about *important features that do not comply with the
>       1991 Standards*.

*Id.* (emphases added). In other words, what is required to satisfy the Reservations Rule largely depends on when the hotel was built. Here, because the Hotel was built *before* 1991 and is not in compliance with the 1991 Standards, the Court must apply the second part of the 2010 Guidance on the Reservations Rule. *See* Defs.' Suppl. Br. at 1–2.

Mr. Love's ADA claim fails as a matter of law because the Hotel's website provides the information required by the 2010 Guidance for older properties built before 1991. Indeed, the Hotel's website specifies that "due to the historic nature of the hotel, several areas of the property are *not* accessible for individuals who require mobility assistance," and more specifically, that "the property is currently *not accessible to those requiring wheelchair access*." RJN, Ex. 2 (emphasis added). The website also states that, although there is "[a]n accessible parking space" and "accessible side approach registration desk," "the path of travel to the guestroom may not be accessible for individuals who require certain types of mobility assistance." *Id.* The website is clear: the Hotel is "in the process of building a fully accessible guestroom." *Id.* The website also lists the (admittedly incomplete) accessible features that are available in each of the Hotel's rooms. This information is more than reasonable, under the Reservations Rule, and is sufficient to permit Mr. Love to assess independently whether the hotel and its guest rooms meet his accessibility needs.

Mr. Love insists in his supplemental brief that "there needs to be an enhanced level of detail on a hotel website when the facility is NOT compliant." *See* Docket No.15 (Mr. Love's Suppl. Br. at 1.) But his only authority for this proposition is Judge Westmore's very recent decision in *Garcia v. Chancellor Hotel Associates*, which is factually distinguishable. *See* 4:21-cv-01395-KAW (Docket No. 25) (N.D. Cal. June 21, 2021) (*Garcia* Order). In that case, Judge Westmore concluded that "it is impossible to determine whether a particular room is accessible to Plaintiff" because the hotel's website "[did] not identify which important features are not accessible." *Id.* at 7. The website here, by contrast, clearly states that the entire "property is

currently not accessible to those requiring wheelchair access." RJN, Ex. 2.  Judge Westmore pointed out that the hotel in *Garcia* did "not provide any information on the width of the doorways leading into accessible guestrooms" or "the accessible route to the accessible room or rooms," *Garcia* Order at 7, whereas here the Hotel's website specifies the rooms have an "[e]ntrance door width of 36"" and "the path of travel to the guestroom may not be accessible for individuals who require certain types of mobility assistance," RJN, Ex. 2.  This information provides sufficiently detailed information for Mr. Love to determine that the Hotel is not accessible to him.  Moreover, a phone number is provided should he want to obtain further information.

Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to Mr. Love's ADA claim.

B. <u>Unruh Act Claim</u>

Mr. Love's Unruh Act claim is predicated on his ADA claim.  *See* FAC ¶ 45 ("The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act.").  Therefore, [b]ecause [Mr. Love] did not adequately allege a violation of the ADA, he necessarily has not adequately alleged a violation of the Unruh Civil Rights Act." *Whitaker v. Body, Art & Soul Tattoos L.A., LLC*, No. 20-55228, 2021 WL 237321, at *2 (9th Cir. Jan. 25, 2021); *see also Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1175 (9th Cir. 2021) ("The Unruh Act is 'coextensive with the ADA.'  Thus, our analysis of Whitaker's ADA claim applies equally to his Unruh Act claim." (quoting *Molski*, *v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007)).

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court takes judicial notice of the Hotel's website screenshots and **GRANTS with prejudice** Ashford's motion to dismiss in its entirety.

This order disposes of Docket No. 9.  The Clerk shall enter Judgment and close the file.

**IT IS SO ORDERED**.

Dated: July 12, 2021

_____
EDWARD M. CHEN
United States District Judge